**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                    )
**UNITED STATES OF AMERICA,**       )
                                    )
            **Plaintiff,**          )
                                    )
            **v.**                  )     **Civil Action No. 04-1543 (RWR)**
                                    )
**SCIENCE APPLICATIONS**            )
**INTERNATIONAL CORPORATION,**      )
                                    )
            **Defendant.**          )
_____)

**<u>MEMORANDUM OPINION AND ORDER</u>**

The United States brought this action against Science Applications International Corporation ("SAIC") under the False Claims Act, 31 U.S.C. § 3729, and District of Columbia common law, alleging SAIC's failure to disclose organizational conflicts of interest as was required under two contracts that SAIC entered into with the Nuclear Regulatory Commission ("NRC").  SAIC moved to dismiss or to strike claims related to its relationship with one trade association, and also moved for summary judgment, arguing that under the contracts it was required to disclose only contractual or consulting relationships that presented an organizational conflict of interest ("OCI") and that one of the contracts was unenforceable because it referred to an inoperative regulation.  Because the contracts did not restrict SAIC's disclosure obligations to only contractual and consulting

-2-

relationships and because neither contract was invalid, SAIC's
motions will be denied.

BACKGROUND

The NRC is an independent federal agency established to
regulate the civilian use of nuclear materials.  (See Am. Compl.
¶ 8.)  The NRC creates scientific standards for allowing
radioactive materials with low levels of contamination to be
released to the private sector for recycling and reuse.  (See id.
¶¶ 10-11.)  In 1992 and 1999, the NRC contracted with SAIC to
provide technical assistance related to this effort.  (See id.
¶ 13.)  Under the 1992 contract, SAIC was to provide the NRC with
technical assistance related to the recycling and reuse of
radioactive material and was to present an options paper
outlining the possible approaches to rulemaking for the release
of these materials.  (See id. ¶¶ 14-15.)  The goal of the 1999
contract was to assess regulatory alternatives regarding the
release of reusable materials.  (See id. ¶ 20.)  SAIC's
neutrality was critical under both contracts.  (See id. ¶¶ 18,
27.)  The contracts explained that SAIC's independence and
neutrality would be compromised by any OCI that would make it
appear as though SAIC was biased in creating its rulemaking
recommendations.

SAIC promised in both contracts to forego entering into any
consulting or other contractual arrangements with any

-3-

organization that could create a conflict of interest.  (See id. ¶¶ 34, 36.)  The purpose of this clause was to avoid OCIs that were, among others, financial, organizational, or contractual. (See id. ¶ 33.)  It warranted upon entering both contracts that it had no OCIs as that term is defined in 41 C.F.R. § 20-1.5402(a).[1]  (See id. ¶¶ 35, 36.)  The regulation defined an OCI as "a relationship . . . whereby a contractor or prospective contractor has present or planned interests related to the work to be performed under an NRC contract which: (1) May diminish its capacity to give impartial, technically sound, objective assistance and advice or may otherwise result in a biased work product, or (2) may result in its being given an unfair competitive advantage."  41 C.F.R. § 20-1.5402(a) (1979).  SAIC further promised in both contracts to disclose any OCIs it discovered after entering the contract.  (See Am. Compl. ¶¶ 35, 36.)  It repeatedly certified throughout the terms of the contracts that it had no OCIs and would notify the NRC of any changes resulting in an OCI.  (See id. ¶¶ 41, 42.)

The government alleges that SAIC breached its OCI obligations under the contracts by engaging in relationships with organizations, including the Association of Radioactive Metal Recyclers ("ARMR") (see id. ¶¶ 52-55), that created an appearance

---

[1]  While the regulation stood repealed at the time, there is no dispute as to the OCI definition it had provided.

-4-

of bias in the technical assistance and support it provided the NRC.  (<u>See</u> <u>id.</u> ¶¶ 49-51.)  According to the government, the contracts required disclosure of SAIC's relationship with the ARMR.  The government alleges that as a sponsor of and participant in the ARMR, SAIC was involved in facilitating and advocating for the reuse of radioactive and contaminated materials.  (<u>See</u> <u>id.</u> ¶ 52.)  As part of this activity, SAIC's vice president allegedly "prepared 'White Papers' that were presented to government officials and private executives urging support of radioactive metal recycling."  (<u>See</u> <u>id.</u> ¶ 53.)  However, SAIC never disclosed this involvement to the NRC.  (<u>See</u> <u>id.</u> ¶ 55.)

    SAIC counters that the two contracts obligated it to "disclose only those consultant or other contractual relationships that could result in an OCI."  (Mem. of P. & A. in Support of Def. SAIC's Mot. to Dismiss in Part or in the Alternative Mot. to Strike ("Mot. to Dismiss") at 3 (internal quotations omitted).)  Because SAIC claims "[t]here was no contractual relationship between SAIC and ARMR" (<u>id.</u>), SAIC argues that "there is no underlying violation, [and] the False Claims Act and common law claims based on this alleged OCI must be dismissed."  (<u>Id.</u> at 4.)

-5-

<u>DISCUSSION</u>

I.   MOTION TO DISMISS

A party may move under Federal Rule of Civil Procedure
12(b)(6) to dismiss a complaint for failure to state a claim upon
which relief can be granted.  <u>See</u> Fed. R. Civ. P. 12(b)(6).  "On
review of a 12(b)(6) motion a court 'must treat the complaint's
factual allegations as true . . . and must grant plaintiff the
benefit of all inferences that can be derived from the facts
alleged.'"  <u>Holy Land Found. for Relief & Dev. v. Ashcroft</u>, 333
F.3d 156, 165 (D.C. Cir. 2003) (quoting <u>Sparrow v. United Air
Lines, Inc.</u>, 216 F.3d 1111, 1113 (D.C. Cir. 2000)).  "While a
complaint attacked by a Rule 12(b)(6) motion to dismiss does not
need detailed factual allegations, a plaintiff's obligation to
provide the grounds of his entitle[ment] to relief requires more
than labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do[.]"  <u>Bell Atlantic
Corp. v. Twombly</u>, 127 S. Ct. 1995, 1965 (2007) (internal
citations and quotations omitted) (alteration in original).
"Factual allegations must be enough to raise a right to relief
above the speculative level, on the assumption that all the
allegations in the complaint are true . . . ."  <u>Id.</u>

Although SAIC contends that the definition of an OCI
contained in the 1992 contract is inapplicable because 41 C.F.R.
§ 20-1.5402(a) was repealed prior to 1992 and replaced by a

-6-

Federal Acquisition Regulation ("FAR"),[2] SAIC has not cited authority for the proposition that repeal of a regulation referred to in a contract before the contract was entered into invalidates either the contract or those contract provisions that refer to the repealed regulation.  Generally, "when a document incorporates outside material by reference, the subject matter to which it refers becomes a part of the incorporating document just as if it were set out in full."  Air Line Pilots Ass'n, Int'l v. Delta Air Lines, 863 F.2d 87, 94 (D.C. Cir. 1988) (internal quotations omitted); see also United States v. Intrados/Int'l Mgmt. Group, 265 F. Supp. 2d 1, 3-4 (D.D.C. 2002) (interpreting a contract in a False Claims Act case to have "incorporated into the contract's terms" the definition of "allowable costs" as provided by an FAR).  Under the controlling definition of OCIs, SAIC was required to disclose not only contracting and consulting relationships, but any relationship which may have compromised its neutrality under the contracts.

---

[2]  The version of the FAR in place at the time the 1992 contract was entered into supports the government's contention that SAIC was required to disclose its sponsorship of ARMR under both the 1992 and the 1999 contracts.  Under the FAR, "[o]rganizational conflict of interest means that because of other activities or relationships with other persons, a person is unable or potentially unable to render impartial assistance or advice to the Government, or the person's objectivity in performing the contract work is or might be otherwise impaired, or a person has an unfair competitive advantage."  55 Fed. Reg. 42685 (Oct. 22, 1990).

-7-

The parties do not disagree that the handling of radioactive materials was at the crux of both contracts entered into between the government and SAIC.  SAIC was responsible for assisting the NRC in setting scientific standards to be followed in the recycling and reuse of radioactive materials.  By directly working a trade association whose aim was to advocate in favor of recycling and reusing radioactive materials, SAIC's ability to provide impartial assistance to the NRC as was required under the contracts could easily be called into question.  Thus, the government has sufficiently alleged that SAIC's sponsorship of the ARMR presented an OCI which SAIC was required to disclose, and the government has sufficiently stated a claim under the False Claims Act.[3]  The claims relating to this alleged OCI will, therefore, not be dismissed.[4]

## II.  MOTION FOR SUMMARY JUDGMENT

In moving for summary judgment, SAIC contends that by referring to an inoperative regulation that deviated from the FAR,[5] the 1992 contract and the government's claims arising from that contract are invalid as a matter of law.

---

[3]  The facts pled would be sufficient to state a claim even if the only covered relationships presenting an OCI were consulting relationships.

[4]  Because the government has adequately alleged a False Claims Act claim regarding SAIC's relationship with ARMR, SAIC's alternative request to strike will be denied.

[5]  See supra note 2 and accompanying text.

-8-

Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, all evidence and reasonable or justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

While SAIC explains in great detail the history of the OCI regulations discussed above, SAIC cites to no authority in support of the legal proposition on which it relies -- namely, that incorporating by reference a regulation which is no longer in effect invalidates the contract incorporating the regulation.  Further, the OCI definitional language contained in both the FAR and the repealed regulation would have required SAIC's disclosure of activities and relationships that potentially compromised SAIC's neutrality.[6]  Accordingly, SAIC has not demonstrated that it is entitled to summary judgment as a matter of law on all claims arising out of the 1992 contract.

---

[6]  Compare 41 C.F.R. § 20-1.5402(a) (1979), with 55 Fed. Reg. 42685 (Oct. 22, 1990).

-9-

<u>CONCLUSION AND ORDER</u>

The government has adequately pled that under the 1992 and 1999 contracts entered into between the NRC and SAIC, SAIC was required to disclose its sponsorship of and participation in the ARMR. Additionally, although the 1992 contract incorporated by reference an OCI definition taken from an inoperative regulation, the contract remained valid and required SAIC to disclose relationships that presented an OCI as defined by that regulation. Accordingly, it is hereby

ORDERED that SAIC's motion [3] to dismiss, or to strike, be, and hereby is, DENIED. It is further

ORDERED that SAIC's motion [21] for summary judgment be, and hereby is, DENIED. It is further

ORDERED that the parties' joint motion [61] for a scheduling conference to set a trial date be, and hereby is, GRANTED. The scheduling conference is set for September 7, 2007 at 11:00 a.m.

SIGNED this 22nd day of August, 2007.

_____/s/_____
RICHARD W. ROBERTS
United States District Judge