# Exhibit 3

1

04-CV-1543(RWR)

Exhibit 3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) Civil Action |
| | ) No. 04-1543 |
| v. | ) |
| | ) September 5, 2013 |
| SCIENCE APPLICATIONS | ) 9:45 a.m. |
| INTERNATIONAL CORPORATION, | ) |
| | ) Washington, D.C. |
| Defendant. | ) |
| | ) |

*TRANSCRIPT OF SCHEDULING CONFERENCE PROCEEDINGS*
*BEFORE THE HONORABLE RICHARD W. ROBERTS,*
*UNITED STATES DISTRICT COURT CHIEF JUDGE*

APPEARANCES:

    For the Plaintiff:    **Donald J. Williamson, Trial Attorney**
    U.S. DEPARTMENT OF JUSTICE
    601 D Street, NW
    Room 9916
    Washington, DC 20044
    (202) 514-7900
    Email: Don.williamson@usdoj.gov

    **Daniel Hugo Fruchter, Trial Attorney**
    U.S. DEPARTMENT OF JUSTICE
    601 D Street, NW
    Washington, DC 20004
    (202) 305-2035
    Fax: (202) 616-4286
    Email: Daniel.Fruchter@usdoj.gov

    For the Defendant:    **Andrew Santo Tulumello**
    GIBSON, DUNN & CRUTCHER, L.L.P.
    1050 Connecticut Avenue, NW
    Washington, DC 20036-5303
    (202) 955-8657
    Fax: (202) 530-9678
    Email: Atulumello@gibsondunn.com

```
APPEARANCES:  Cont.
                              Amir C. Tayrani
For the Defendant:            GIBSON, DUNN & CRUTCHER, LLP
                              1050 Connecticut Avenue, NW
                              Suite 300
                              Washington, DC 20036-5306
                              (202) 887-3692
                              Email: Atayrani@gibsondunn.com


Court Reporter:               Scott L. Wallace, RDR, CRR
                              Official Court Reporter
                              Room 6503, U.S. Courthouse
                              Washington, D.C. 20001
                              202.354.3196
                              scottlyn01@aol.com


Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.
```

<u>MORNING SESSION, SEPTEMBER 5, 2013</u>

(9:48 a.m.)

THE COURTROOM CLERK:  Your Honor, this morning this is *En re: The United States versus Science Applications International Corporation*, Civil Action Number 04-1543.  I would ask the parties to step forward and identify yourselves for the record, please.

MR. WILLIAMSON:  Your Honor, my name is Don Williamson, I'm counsel for the United States, and with me is Dan Fruchter, who is also a trial attorney with the Department of Justice and Stephanie Liaw from the Nuclear Regulatory Commission.

THE COURT:  Good morning.

MR. WILLIAMSON:  Good morning.

MR. TULUMELLO:  Good morning, Your Honor.  Drew Tulumello from Gibson-Dunn on behalf of SAIC with my colleagues, Chantale Fiebig and Amanda Neely.

THE COURT:  All right.  Good morning.

MR. TULUMELLO:  Good morning.

THE COURT:  What I wanted to do was set a trial conference date and a trial date, but I think I first need to find out from both sides how long you expect your cases to take.  Let me ask the government, how many witnesses do you expect to call and how long do you think it would take to put on your case-in-chief, taking into account likely cross-examination?

MR. WILLIAMSON:  Your Honor, we're still working on that

4

1    somewhat, and we do believe, as a result of your Honor's recent

2    order, as well as taking advantage of what is available from the

3    prior trial, we can shorten it, but right now we're still at

4    about a week and a half, two weeks for our case-in-chief.

5            THE COURT:  How many witnesses?

6            MR. WILLIAMSON:  Approximately, I think, 22 witnesses,

7    Your Honor.

8            THE COURT:  All right.  What about the SAIC's projections?

9            MR. TULUMELLO:  Your Honor, our projections are

10   approximately five days for our case and about a dozen witnesses.

11   If Your Honor would permit me, I think we've had some discussions

12   with the department about some limited additional discovery in

13   light of Your Honor's rulings, mainly on the issue of damages.  I

14   think that's the key issue coming out of the D.C. Circuit ruling,

15   and under the new rule, we are entitled, on behalf of the

16   company, to put forward evidence of the value of the work product

17   that we delivered to the NRC, and the government continues to use

18   our product, it continues to be on their Website, they continue

19   to rely on it, and in Your Honor's opinion, you cited the fact

20   that evidence of the government's use reflected value to the

21   government, and on that issue we would like to take some

22   additional discovery from the government before we get going on

23   our retrial, in effect carry forward evidence.

24           In addition, we'd like a limited period of time, not a

25   lot, but a limited period of time to prepare our experts on these

1   issues.  So, I do think the estimate of the five days and twelve

2   witnesses is realistic, but I do think that in order for us to

3   prepare our case, we would like to have what I would call a stub

4   period or a brief period to be able to take the discovery that we

5   think is now allowable and permissible to put on our defense

6   case.

7         THE COURT:  Try to remind me.  Was that a matter that was

8   foreclosed during the discovery period when the case was still

9   pending pre-trial?

10        MR. TULUMELLO:  It was certainly precluded in the trial

11  last time.  That evidence was precluded.

12        THE COURT:  No, not at the trial --

13        MR. TULUMELLO:  No.

14        THE COURT:  -- in the discovery period before the trial.

15        MR. TULUMELLO:  In discovery it was not fully developed by

16  SAIC.

17        THE COURT:  The question was, was it precluded?  Was there

18  any order?  Was there any agreement?  Was there any directive

19  that that could not be the subject of discovery?

20        MR. TULUMELLO:  I do not believe that was the case, Your

21  Honor, but I do believe that we would be significantly prejudiced

22  if we did not have an opportunity to develop in a brief period of

23  time evidence of the value the government received.  That's

24  critical to the case.  The breach of contract verdict that the

25  jury affirmed was $86.  We know that there was value to the

```
 1    government.  It was not clear before the D.C. Circuit's ruling

 2    precisely what the calculation is on damages.  We now know it's

 3    what the value the government received -- or what the government

 4    paid, which was 2 million, less the value they received, and it's

 5    that second part on of the equation that wasn't fully developed.

 6    We would like to take a deposition on how they've used our

 7    material since we were last here.  I mean, that is value and

 8    there's no way we could have taken discovery as to that issue in

 9    the intervening period, and we would like to put an expert up on

10    that issue with the benefit of the discovery.  So it's certainly

11    not a, you know, request for undue delay, it's just a request

12    that we be able to develop evidence that goes to one of the

13    elements of our defense.

14         THE COURT:  Well, is there a reason that that deposition

15    or discovery was not taken before the trial in the case?

16         MR. TULUMELLO:  Your Honor, I can't -- standing here right

17    now, I can't answer that.  Prior counsel handled the trial in the

18    case.  There was a 30(b)(6) deposition, I believe, on damages

19    from the government, but it did not explore the government's view

20    of the value provided to -- SAIC's work product that was provided

21    in light of the D.C. Circuit's guidance, and I think SAIC was not

22    permitted to introduce at trial evidence of the value it

23    conferred on the government, and I believe the expert was -- our

24    expert at the time on the first trial was precluded from

25    testifying.  And so all we're saying is, let's do it right on the
```

1    second go around.  We should have an opportunity to say, How have

2    you been using our product?  It's now been 16 years and they

3    continue to use it while claiming in this Court that it is

4    valueless, and that they shouldn't pay anything for it, and let

5    us put on an expert that says, yes, the government did get value

6    for it, and we will be able to make our defense.  I think if we

7    are precluded from doing even that most basic work, we would be

8    severely handicapped and, you know, fundamentally prejudiced in

9    trying to prove that there were no damages, and we believe there

10   weren't.

11            THE COURT:  So what is it that you're suggesting

12   schedule-wise?

13            MR. TULUMELLO:  So what I'm suggesting schedule-wise, I'm

14   going to talk to the government about, is a period in the

15   neighborhood of four to six months to complete a 30(b)(6)

16   deposition, and to ask the government to update, in effect, some

17   of their discovery responses having to do with the -- with

18   damages, the value that we conferred, how they're continuing to

19   use the product.  And I think, you know, in 120 days we can get

20   that finished.  And then what I would propose is 30 days after

21   that, expert reports; 30 days after that, expert reports.  That

22   gives you a three- to six-month period to complete a very

23   targeted surgical discovery.  And then we'd be prepared to go to

24   trial in the early part of '14, and we're prepared to set a trial

25   date in that period today.

1    THE COURT:  And what has the government's response been to

2  your proposal?

3    MR. TULUMELLO:  The government's response has been, I

4  think, amenable.  I think the government -- Without prejudice to

5  the position they can take this morning, I think our previous

6  discussions have signaled a general willingness to certainly

7  engage in expert discovery.  I think somewhat less reluctance to

8  do fact discovery although openness to it because -- as long as

9  it's surgical and targeted -- and they primarily don't want an

10  open-ended kind of redo and our client doesn't either.  I think

11  everyone understands kind of what the overall magnitude of the

12  stakes are here and no one's looking to engage in broad-based

13  discovery, so I think they're open to it, what I would call a

14  discovery approach that fills gaps and crevices but that isn't

15  open-ended, and that certainly doesn't preclude the Court from

16  entering the trial date and getting us to work right away.

17    THE COURT:  All right.  Thank you.  Mr. Williamson.

18    MR. WILLIAMSON:  Thank you, Your Honor.  I have a slightly

19  different memory of the events of the first go around, and I'd

20  like to address where we are now.

21    THE COURT:  All right.

22    MR. WILLIAMSON:  Briefly, Your Honor.  It is our position

23  here today that what we would like to do is get a, as Your Honor

24  started out with, a pre-trial statement schedule and a trial

25  scheduled as soon as possible.  I do think that some time in the

1  next year for a number of reasons would be appropriate for both

2  of those but early in the next year.  As to what needs to be

3  done, Your Honor, there was no preclusion with respect to those

4  issues in the last go around in discovery, and indeed those

5  issues were discovered extensively.  There was a 30(b)(6)

6  deposition solely on the topic of damages that lasted a day.

7  There were about 20 other topics connected to that.  I think a

8  total of four or five witnesses were designated by the NRC, and

9  that's just 30(b)(6) testimony and there were also a number of

10  fact witnesses who were asked if -- in lengthy full day

11  depositions -- about their position on these issues as well, and

12  so we certainly do not want to reinvent the wheel.  We do not

13  think it would be appropriate to reinvent the wheel.  We think

14  both parties had an opportunity to fully discover these issues on

15  the first go around and that there's no suggestion of something

16  new that has come up from either the Circuit Court's opinion or

17  Your Honor's most recent opinion that would justify discovery on

18  things that had already been discovered.

19       That said, we would be willing to consider, as counsel

20  mentioned, and we would be amenable to a short and discreet

21  period of additional expert disclosures.  I would note that I

22  don't think their experts were precluded in the first round so

23  much as they chose not to call them, ultimately, at trial.

24  Nevertheless, we would be amenable to a short -- our position

25  would be disclose in 45 days, rebut in 30 days, discover within

1   120 days, and we're done with respect to expert discovery.  And

2   that would be also, if there is a need for additional fact

3   discovery, which we do not believe there is, that should be

4   conducted in that same period of time that is proposed for the

5   experts, and the reason I say that is we certainly do not agree

6   and we do not want to have to go through another 30(b)(6)

7   deposition of any government agencies.  We did one for the EPA,

8   we did one for the NRC, and we just do not think it's appropriate

9   to have to do that again on topics that have already been

10  covered.

11        THE COURT:  And may I just ask you, then, it appears to be

12  that the discovery conducted in the 30(b)(6) depositions before

13  trial did not address the damages issue concerning the

14  government's view about value of the product.  Do you contest

15  that?

16        MR. WILLIAMSON:  Yes, we do, Your Honor.

17        THE COURT:  Can you present me any information or evidence

18  or citation to transcripts, anything like that to support your

19  position?

20        MR. WILLIAMSON:  Yes, Your Honor.  Certainly with respect

21  to -- is this something you would like me to discuss right now or

22  something that you're asking me to submit?  I'll do both.  But

23  certainly Ms. Trottier, Cheryl Trottier was designated by the NRC

24  to testify on some of the topics.  There were numerous topics

25  that would essentially be covered by the word damages, but some

1   of the topics were damages, and she was asked and she did answer

2   extensive questioning on what value did this product, either New

3   Reg 40 [sic] or the entire development, have on the NRC, and her

4   testimony was zero.  And while it may -- and that was freely

5   open, that topic, the topics that flowed from that topic, the

6   rebuttal of that topic, was completely open for discovery on the

7   first go around.  And Ms. Trottier, I again believe it was a full

8   deposition of Ms. Trottier, was asked a number of questions in

9   that area, as were other witnesses, both 30(b)(6) and fact.

10       So, on that issue itself, what is the value of either the

11   product itself or the development of that product by SAIC, there

12   was plenty of testimony in the first go around.

13       And I would also suggest that there was plenty of

14   testimony by the folks from SAIC in response to some of our

15   questions.  It was only when we got to trial that some of that

16   was not brought out because of some of the rules that came about

17   in the first instance with respect to the relevance of value, but

18   it is not the case that there was any restriction or preclusion

19   of those issues and addressing those issues in discovery in the

20   first round.

21       And so I would point primarily to Ms. Trottier.  However,

22   there was also testimony -- there was also testimony by a Frank

23   Cardile, both as a fact witness and a 30(b)(6), on the same

24   topic.  Essentially, Your Honor, the position of the NRC then, as

25   it is now, is because of the conflicts of interest, and without

1    disregarding the fact that some of the work product from the SAIC

2    effort continued to be used, the SAIC effort itself was tainted,

3    and therefore was not of the value that was paid for and was of,

4    in the instance of the 30(b)(6) testimony, she specifically

5    answered was of no value to the NRC.

6          THE COURT:  Well, that exception you started your last

7    sentence with appears to be a big one to the SAIC.  Tell me what,

8    if any, questioning there had been with respect to the continued

9    use, why there was continued use, what value there was for the

10   continued use, and so on.  That appears to be, I think, at the

11   heart of also what SAIC is saying.

12         MR. WILLIAMSON:  Thank you, Your Honor.  First, there was

13   absolutely no preclusion by Your Honor or by the parties of any

14   inquiry into that area.  That's the first thing.  So -- I'm not

15   suggesting there's not some nook and cranny out there in that

16   area that might not have actually been examined, but I will say

17   there was no preclusion.  However, there was extensive testimony,

18   extensive document production of the follow-on efforts by a

19   number of parties, Sandy Cohen & Associates.  You may -- you

20   probably do not remember, Your Honor, but there was testimony at

21   trial from Sandy Cohen.

22         That was the follow-on contractor.  We produced all of the

23   documents from that follow-on effort.  There was testimony about

24   that follow-on effort and how the NRC used the SAIC developed

25   work product to further that product.  There was extensive

1    testimony about the National Academy of Sciences's review of the

2    SAIC work product.  Those documents were presented at trial.

3    There was extensive testimony about other peer review products

4    that were done on the SAIC work product.  You may remember from

5    the trial, Your Honor, it was actually presented that there's a

6    thank you note on the NRC Website thanking some of the SAIC

7    personnel about the work produce that was developed under the

8    SAIC contract.  So, Your Honor, to suggest that there has not

9    been discovery of that issue is simply incorrect.  There was

10    extensive written and oral testimony in the first go around on

11    that very topic, mainly, what happened after SAIC was terminated

12    as a contractor?

13        We went -- at the time, the discovery carried all the way

14    into -- I believe we tried this case in 2008.  We carried that

15    discovery all the way to what was the status in 2007.  I even

16    believe at trial something was put in from -- my recollection is,

17    and I can't be certain about this, Your Honor, but my

18    recollection is within the four months of the trial relative to

19    the SAIC New Reg 1640 was presented.

20        Now, we would dispute -- I'm certainly not suggesting that

21    we would agree as to how that evidence came out and what it was,

22    that there was any value to the SAIC follow-on product, but what

23    I am suggesting, Your Honor, is that the follow-on efforts

24    conducted by the NRC post-termination of SAIC was extensive, both

25    written and -- and Your Honor, my colleague has presented to me

1   that there is a citation on page 51 of your most recent order to

2   some of the testimony of Ms. Trottier on 30(b)(6) as to the value

3   that I was citing to.  That's on page 51 of Your Honor's order.

4        THE COURT:  Tell me your reaction to the proposal that the

5   SAIC counsel made to ask the government to update some of the

6   written discovery.  I'm not sure if it was a request for

7   admissions or interrogatories or what have you, but have you all

8   agreed at least to do that?

9        MR. WILLIAMSON:  What we have agreed to -- and counsel is

10  correct.  I think there is some general agreement that that may

11  be appropriate.  The one major caveat I have is that -- or

12  concern that I have is that when we did this the first time

13  around, we produced documents in two different ways.  One was

14  what I consider to be the more modern way of gathering responsive

15  documents, Bates stamping them and producing them to the other

16  side either in electronic or hard copy form.  But given that this

17  case was discovered in the olden days, we also did a little bit

18  of the old method which was to produce large, you know, basically

19  groups of documents, file cabinets of documents.  Both sides did

20  this, down in Oak Ridge at the NRC, at SAIC, produced file

21  cabinets for the parties to look through.  You know, the

22  production was the making available the documents as Rule 34

23  still provides, and then looking at those.  The difficulty I have

24  is if what we were updating is what was produced, I have a

25  difficulty with it because that would require both sides to go

1   back and redo what has already been done, namely make these large

2   collections of both scientific and contract-type documents

3   available.  If what we have agreed to is -- and I think this may

4   be what they have in mind.  Let's say, for example, that since

5   discovery ended some time in 2007, there has been some further

6   use of New Reg 1640 since then that has not been produced by the

7   NRC but nevertheless is a document that the NRC has generated

8   since then, I do think a very limited, specifically tailored, not

9   give me all documents, but rather, Do you have anything else in

10  this specific area that you didn't get the first time around or

11  that has been generated since then up to a certain relevant date.

12  We would certainly be amenable to that, Your Honor, because I do

13  think it would be consistent with the truth-finding mission, but

14  at the same time not cause either party to have to go through

15  basically a redundant exercise of document production.  So we

16  would be, you know -- So the condition is, Your Honor, to try to

17  be simple, is not redundant, but also very specific.  We would be

18  amenable to document production by both sides under those

19  circumstances.

20          THE COURT:  Well, have you discussed with Mr. Tulumello

21  that scope issue?

22          MR. WILLIAMSON:  I believe we have, and I think that we

23  have not reached an agreement, but I do -- I feel confident,

24  given the tone of the discussions, that we can reach agreement on

25  that consistent with those terms.

1    THE COURT:  You share that confidence?

2    MR. TULUMELLO:  I do, Your Honor.

3    THE COURT:  What, then, do you propose by way of

4  scheduling?

5    MR. WILLIAMSON:  Your Honor, we would propose that

6  everything by way of any type of discovery is concluded by the

7  end of January of next year, and that pre-trial statements are

8  filed by the end of February, and that the trial is scheduled for

9  some time as soon as possible thereafter.

10    That, Your Honor, I believe, presents approximately 150

11  days, and we would certainly be amenable to a shorter period of

12  time if Your Honor thinks that is more appropriate for scheduling

13  purposes, but we would think that within 150 days it does meet

14  what has been asked for by our colleagues.

15    And basically what we would propose is that, like our last

16  round of experts in the first go around, both parties have an

17  obligation to designate within 45 days of today; 30 days later

18  both parties have an obligation to disclose rebuttal; and then up

19  until the end of that period in January to basically conclude

20  expert discovery.  That's the only -- that single expert

21  disclosure and potential rebuttal is the only thing that I think

22  there's some agreement on that there's, given what has occurred

23  at the Court of Appeals and in pre-trial orders, would make

24  sense, to have -- I think we're both in agreement that some, you

25  know, single topic expert disclosure is appropriate.  With

1   respect to the fact discovery, Your Honor, as I mentioned, we're

2   not precluding it, but we do think a 30(b)(6) is inappropriate.

3   We do think, you know, full day fact depositions are

4   inappropriate.  We do believe, other than what we were just

5   discussing about some very limited document discovery, we think

6   interrogatories would be inappropriate.  We've done those.  The

7   issues were available, and it's a combination of its unnecessary

8   and it's resource draining, and we've been there enough.

9           THE COURT:  Well, I must confess I was a little surprised

10  to hear from Mr. Tulumello a request for the lengthy period that

11  he suggested.  It sounds like you're suggesting the same period

12  of time, and it sounded as if he was looking for one 30(b)(6)

13  deposition, potentially one additional add-on with respect to

14  experts.  I just couldn't in my mind phantom that that would take

15  120 or 150 days.  I was looking more at something much shorter

16  than that, and I'm trying to reconstruct how you got to the 150

17  day mark.

18          MR. WILLIAMSON:  I may be too much of an accommodator

19  here, Your Honor.  I truly do think that if we had our drudgers,

20  and without attempting to accommodate, and I apologize because I

21  do think commendation is -- but I do believe with us it's 45, 30

22  and 30 is what you get, so that's about 105 days, Your Honor; 45

23  to disclose, 30 to rebut, and 30 to complete discovery of

24  everything.  And I think that within that same period of time any

25  limited fact discovery could still be conducted.  I do still

1   think, if my math is correct, that that still takes us
2   essentially to, rather than the end of January, which is what I
3   proposed, basically the beginning of January to be done, 105 days
4   from today.
5        THE COURT:   Some of this may depend on the request to be
6   able to take a 30(b)(6) deposition.   I suspect I might want to
7   give you all a little bit of additional time to brief that.   And
8   then, perhaps, once that's been decided, that may shape how much
9   time at least I think you all would need to finish this up and
10  then set a pre-trial and a trial date.
11       You said you might be able to brief your arguments as well
12  with regard to the 30(b)(6) deposition request, and what, if any,
13  preclusion there may have been, if any, and what, if any, actual
14  discovery had been conducted, and, you know, full questioning put
15  forward on those issues.   How quickly do you think you could file
16  something?
17       MR. WILLIAMSON:   Your Honor, you know what --
18       THE COURT:   I'm wondering, since it's the request of SAIC,
19  it might make more sense to ask SAIC to brief it with whatever
20  justification and supporting information SAIC has, and then you
21  respond to it.   It might make more sense to shift the sequence in
22  that fashion.   Let me hear from you, though.
23       And just so that you can project for me, I'm looking at
24  time-wise.   As you heard from my initial questions to you, I was
25  most interested in whether there was anything precluding SAIC

1    from exploring this during the discovery period pre-trial.   I

2    haven't heard yet that there was.   I heard you argue that you

3    would feel prejudiced if you were not able to go back and take

4    some additional 30(b)(6) deposition, but I guess I need to know

5    why I would conclude that you would be prejudiced by some choice

6    counsel may have made for SAIC before now to either pursue or not

7    pursue as fully as you might want to an area that they were

8    precluded from pursuing.   So those are some of the things that

9    are potentially going to guide some judgment about letting you

10   get in another 30(b)(6), which the government opposes.   So I

11   guess my question to you is, how quickly can you file something

12   to address my concerns and then we'll try to get something from

13   the government.

14        MR. TULUMELLO:   We can file something next week, Your

15   Honor.   Certainly by the end of next week would not be a problem,

16   and we're happy to do that.

17        With that said, I understand -- I certainly understand the

18   Court's concern.   I think there are two categories that I would

19   want to focus on:   One is if the issue of preclusion was the

20   issue explored.   I think that is one issue.   I think the

21   government will have some good points, that the issue was touched

22   upon, explored tangentially.   We're not going to be able to, I

23   don't believe, demonstrate that the Court or even prior counsel

24   stayed away from it completely.   But that's one category.

25        The second category, and this is important to distinguish,

1    is the continued use of the product, which is still on the NRC

2    Website, at least as recently as we checked it.  I think counsel

3    for the Department just acknowledged here that document discovery

4    on the issue of continued use would be relevant, continued use

5    would be relevant in the 30(b)(6) on damages to establish value.

6    So I look at those as two categories.  We will try to persuade

7    you on both, but I just wanted the Court to be aware that we're

8    bringing forward evidence that we think is very significant.  The

9    fact that they're continuing to use the SAIC work product 16

10   years after the fact is really going to negate the damages claim

11   that it's worthless.

12        THE COURT:  And I suppose, Mr. Williamson, four years

13   after the information that had been presented to the jury is an

14   additional bunch of data that they would want to show to the

15   jury.  Can you rebut that in any way?  I mean, why isn't he right

16   about that?  In other words, giving him a chance at least to say,

17   okay, up until the time of trial we weren't precluded from

18   investigating or questioning about the value and use up through

19   trial but that was back in 2008.  We're now in 2013, five years

20   later, the agency is still using some of this product, and the

21   argument is we ought to be able to question the agency or

22   appropriate representatives about use from 2008 to 2013, and why,

23   and what value is it?  Why isn't that a good point?

24        MR. WILLIAMSON:  A few points, Your Honor.  One is, I

25   suppose, a hyper-legal one, which is that discovery in trials

1    have cutoff dates.  In almost any instance I can imagine, even

2    the time between the end of discovery in any case, I can imagine,

3    from the end of discovery and the beginning of trial, things

4    continue to development, facts continue to develop, but the

5    reality is, given the system that we have, there are cutoff

6    dates, and the parties agreed to a cutoff date the first time

7    around, and so there's nothing that I know of that would suggest

8    that we have to, just because we're coming back, we have to

9    somehow reopen that trial data.  The presentations can be the

10   same and just as fair as the first time around.

11        More importantly, Your Honor, let me first state, we

12   definitely disagree that there is a further use of the SAIC

13   product.  SAIC was hired not to development a product but to

14   provide services to allow the NRC to produce a product that would

15   eventually lead to, hopefully, the ability to release certain

16   materials from nuclear facilities.  The fact that that New Reg

17   1640, which is the proposed rule, still has both a genesis and a

18   continuation on the NRC's website or is being used by the NRC in

19   certain circumstances does not mean that SAIC today continues to

20   influence the development of that product.  The SAIC effort, Your

21   Honor, that led to some publication of SAIC materials and use of

22   SAIC materials, that has stopped.  That can be presented from

23   well before even our last trial, I would say by the 2004

24   timeframe, and the reason for that is that if, if there is a DNA

25   imprint in the release materials that are developed and used by

1   the NRC, the SAIC portion of that DNA, Your Honor, ceased upon

2   termination.  To the extent it's still there, it is less there

3   today than it was at the time we tried the case the first time,

4   and it is less there today than it was four years before the last

5   trial.  And so my point is, while there may be some diminishing

6   factual presence of SAIC work product in some of the calculations

7   and all that are used by the NRC, they are distinctly

8   diminishing, and I would say for that reason they are irrelevant

9   to continued discovery.  Again, we would be amenable to discovery

10  merely to demonstrate that to them, but we would argue at trial

11  they are irrelevant, and anything past, I would think, 2002, 2003

12  is irrelevant for the same reason, because if here is the state

13  of affairs of SAIC's involvement in 2002 and it only goes

14  downhill from there time-wise, I don't see why we need to

15  development a full factual record of what happened in 2012.  But

16  that would be -- the main point, Your Honor, is we don't even

17  think that is really what is -- that report, and this was perhaps

18  some error of emphasis in our first go around, we do not believe

19  that 1640, this product 1640 should have taken on anywhere near

20  the significance that it did, and that is because that is not the

21  SAIC -- SAIC was a contributor to that, but their efforts, the

22  thing that was conflicted was that contribution, not the report

23  itself and not the use of that report further on, so that's

24  another reason why we would argue diminished relevance.

25        THE COURT:  Well, I think we'll see some lively briefing.

1    I look forward to them.  Let's try to set some deadlines for the

2    briefing.  When do you think you can get them to us, Mr.

3    Tulumello, your brief?

4         MR. TULUMELLO:  I'm happy to submit by next Friday.

5         THE COURT:  Okay.  That's the 13th?

6         MR. TULUMELLO:  Yes.

7         THE COURT:  How quickly do you think you can respond?

8         MR. WILLIAMSON:  Would seven days be sufficient, Your

9    Honor?  We certainly could do the following Friday.

10        THE COURT:  That's September 20th.

11        MR. WILLIAMSON:  Yes, Your Honor.

12        THE COURT:  All right.  And if you need to file a reply,

13   can you do it within five days, five calendar days?

14        MR. TULUMELLO:  Sure, we can, Your Honor.

15        THE COURT:  That would be September 18th -- oh, no,

16   September 25th.

17        I think what I want to do is get that briefing in.  That

18   probably -- the decision on that will probably have a significant

19   impact on the schedule going forward, so I should probably wait

20   until then before setting a pre-trial and a trial date.  Did you

21   want to raise something else?

22        MR. TULUMELLO:  No, Your Honor.  I just -- Well, yes, Your

23   Honor.  That's why I'm here.  I just wanted to -- I just wanted

24   to, in effect, put a marker down on the number of witnesses that

25   the government mentioned, and the government mentioned something

1   like 22 witnesses.  I think they had 25 last time.  I think in

2   your decision on the cross motions for summary judgment, you

3   know, we had said that the government could not identify an

4   individual who had scienter, simultaneous knowledge of the

5   conflicts of interest and the materiality of the absence of

6   conflicts to the government's decision to pay.

7        The government came forward with a brief and, as you

8   pointed out in I think Footnote 7 of your decision, a 101 page

9   Statement of Facts, Your Honor went through every single

10  individual that the government proposed had scienter and said

11  there was no triable issue of fact except as to one person, and

12  so I want to be very clear on the record here that we believe

13  that issue of scienter is now limited to that one individual in

14  accordance with the Court's opinion.  And so while we can defer

15  the issue of, you know, witnesses and we'll work with the

16  government on that, I think, you know, a sort of de facto end run

17  around the Court's ruling to bring in these other witnesses to

18  try to prove scienter through them when the Court has said there

19  hasn't been -- there is no issue of fact as to them, would be

20  inconsistent with the ruling.  That might be better addressed at

21  a motion in limine, but I just wanted to get that on the record

22  early because that is a point that we feel quite strongly about

23  and we think should significantly streamline the trial

24  presentation when we get there on the government's side.

25       THE COURT:  Well, the marker is set, and I do think,

1    though, that is something that ultimately will be resolved at any
2    pre-trial.  I'd certainly remind you that you have the pre-trial
3    statements due in advance of the pre-trial, which also requires
4    meeting and conferring, and those kinds of disputes are likely to
5    arise should there be challenges.  I don't know who the 22
6    witnesses are and I'm not going to presume to guess, but if you
7    have substantive challenges to them, I'm sure I'll hear about it
8    in the pre-trial, and that will be the time, I suppose, that that
9    issue will be resolved or we'll try to.
10        All right.  Well, I think I want to stop at that rather
11   than going forward to pick a pre-trial and a trial date.  I think
12   it's going to be influenced to a significant degree potentially
13   by the result of the briefing that we are expecting to see.  So,
14   that's about all I needed to raise with you at this point.  Is
15   there anything else you wanted to raise with me?
16        MR. WILLIAMSON:  No, Your Honor.
17        THE COURT:  Anything else?
18        MR. TULUMELLO:  No, Your Honor.
19        THE COURT:  All right.  I think what I'll do is, rather
20   than set today a date for you all to come back, when we get the
21   briefing and make a decision, we'll issue, I guess, an order that
22   sets a schedule for further proceedings, and at minimum I'll want
23   to bring you all back in with your calendars to pick a pre-trial
24   and a trial date, bearing in mind the projections of a probable,
25   what, three-week trial?

1    All right.  All right.  If there's nothing else, thank you

2 very much for coming in.  You may be excused.

3    MR. TULUMELLO:  Thank you, Your Honor.

4    MR. WILLIAMSON:  Thank you.

5    (Proceedings adjourned at 10:25 a.m.)

6        C E R T I F I C A T E

7

8       I, Scott L. Wallace, RDR-CRR, certify that
 the foregoing is a correct transcript from the record of
 proceedings in the above-entitled matter.

9

10

11  ---------------------------   ----------------
  Scott L. Wallace, RDR, CRR   Date
   Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25