UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                              )
UNITED STATES OF AMERICA,      )
                              )
     Plaintiff,                )
                              )
     v.                        )      Civil Action No. 04-1543 (RWR)
                              )
SCIENCE APPLICATIONS           )
INTERNATIONAL CORPORATION,      )
                              )
     Defendant.                )
_____)
```

MEMORANDUM ORDER

The United States brought suit against Science Applications International Corporation ("SAIC") alleging, in part, that SAIC failed to make disclosures of organizational conflicts of interest as was required under two contracts that SAIC entered into with the Nuclear Regulatory Commission ("NRC") in 1992 and 1999, in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729. On SAIC's appeal of a jury verdict finding SAIC liable on the FCA claims, the D.C. Circuit vacated the judgment on FCA liability and damages due to a faulty jury instruction about calculating damages and remanded the case for further proceedings. SAIC now moves to reopen discovery on damages. Because SAIC is entitled to limited additional discovery on the issue of the government's continuing use of any SAIC work product but is not entitled to a broader reopening of discovery, its motion will be granted in part and denied in part.

The D.C. Circuit found that the jury damages instruction was flawed. At trial, the jury was instructed:

> Your calculations of damages should be limited to determining what the [NRC] paid to SAIC over and above what the NRC would have paid had it known of SAIC's organizational conflicts of interest. Your calculation of damages should not attempt to account for the value of services, if any, that SAIC conferred upon the [NRC].

Final Jury Instructions, Trial Tr. vol. 16 at 21:22-22:3, July 28, 2013, ECF No. 161. The court of appeals found that this instruction was erroneous because it "essentially required the jury to assume that SAIC's service had no value even in the face of possible evidence to the contrary." United States v. Sci. Applications Int'l Corp. (SAIC III), 626 F.3d 1257, 1279 (D.C. Cir. 2010). Instead, the court stated, "[t]o establish damages, the government must show not only that the defendant's false claims caused the government to make payments that it would have otherwise withheld, but also that the performance the government received was worth less than what it believed it had purchased." Id. Thus, for the government "to recover the full value of payments made" to SAIC, "the government [must] prove[] that it received no value from the product delivered." Id. "SAIC, however, must also be allowed to offer evidence to the contrary[.]" Id. at 1280.

SAIC moves under Federal Rules of Civil Procedure 26(b)(1) and 16(b)(4) to reopen discovery, which closed in 2006, "for the limited purpose of allowing SAIC to develop the record evidence of value the Nuclear Regulatory Commission ('NRC') has received from SAIC's work[.]"  SAIC's Mot. for Targeted Discovery on Damages ("SAIC's Mot.") at 1.  To do this, "SAIC requests 120 days to depose a witness . . . on the NRC's use of SAIC's work product; to conduct three half-day depositions of new fact witnesses regarding damages; and to seek from the government responses to specific and particularized document requests and a single interrogatory relating to damages."  Id.  The proposed document requests seek: (1) "[a]ll documents related to or reflecting the NRC's use of SAIC's work performed under the 1992 and 1999 Contracts and the NRC's use of NUREG-1640," (2) "[a]ll documents that evidence, support or establish the damages allegedly incurred by the Government as a result of the OCIs alleged in the Complaint," and (3) "[a]ll documents upon which the Government intends to rely at trial (related to damages)."  SAIC's Mem. in Supp. of Mot. for Targeted Discovery on Damages ("SAIC's Mem.") at 16.  SAIC insists that the discovery will lead to relevant evidence it needs to contest the government's argument that SAIC's services were worthless.  The government

opposes.[1]  See U.S.'s Mem. in Opp'n to Def. SAIC's Mot. for
Discovery ("U.S. Opp'n") at 1.

Generally, "discovery under the Federal Rules of Civil
Procedure should be freely permitted," Edmond v. U.S. Postal
Serv. Gen. Counsel, 949 F.2d 415, 425 (D.C. Cir. 1991), and
discovery disputes are committed to the discretion of the court.
United Presbyterian Church v. Reagan, 738 F.2d 1375, 1382 (D.C.
Cir. 1984); accord Fusco v. Gen. Motors Corp., 11 F.3d 259, 267
(1st Cir. 1993); Cleveland By & Through Cleveland v. Piper
Aircraft Corp., 985 F.2d 1438, 1450 (10th Cir. 1993), abrogation
on other grounds recognized by US Airways, Inc. v. O'Donnell, 627
F.3d 1318, 1326 (10th Cir. 2010).  This discretion includes
whether to reopen discovery.  Watt v. All Clear Bus. Solutions,
LLC., 840 F. Supp. 2d 324 (D.D.C. 2012); accord Fusco, 11 F.3d at
267.

SAIC contends that a motion to reopen discovery prior to a
retrial is governed by the "good cause" standard.  SAIC's Mem. at
7.  By contrast, the United States argues that the "manifest
injustice" standard should apply.  U.S. Opp'n at 2.  Neither the

---

[1] The government also requests permission to conduct
additional discovery about each SAIC's employee's relevant
knowledge of the conflict of interest requirements if discovery
is re-opened.  However, the government has not demonstrated that
it is entitled to reexplore an issue that it has already had the
opportunity to explore during the initial discovery period.  U.S.
Opp'n at 19-20 n.9.  Accordingly, that request will not be
granted.

D.C. Circuit nor the Supreme Court has spoken on what standard is applicable to a motion to reopen discovery prior to a retrial. Typically, "reopening discovery would require a showing of good cause" because reopening discovery requires an amendment of a scheduling order. <u>United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.</u>, 576 F. Supp. 2d 128, 133 (D.D.C. 2008). However, the United States contends that because a final pretrial order was issued before the first trial, the appropriate standard for reopening discovery is manifest injustice. U.S. Opp'n at 2 ("Moreover, in a retrial setting, Federal Rule of Civil Procedure 16(e) and Local Rule 16.5 mandate that final pretrial orders issued by the Court for the first trial 'shall control the subsequent course of action . . . [and] shall be modified only to prevent <u>manifest injustice</u>.'"); <u>see also</u> Fed. R. Civ. P. 16(e) (stating that modification of a final pretrial order is permissible only to "prevent manifest injustice."); LCvR 16.5 (same). While there is some force to SAIC's argument that the good cause standard should apply, <u>see</u> SAIC's Mem. at 4; SAIC's Reply at 3-5, it is unnecessary to decide which standard is applicable since SAIC has shown that it would suffer a manifest injustice if it were denied the opportunity to discover evidence arising after discovery closed in 2006 about damages. However, SAIC has not demonstrated good cause for reopening discovery on

matters that it had a full opportunity to pursue before discovery closed in 2006.

The factors that courts consider when determining whether there is good cause to reopen discovery include "(1) whether trial is imminent; (2) whether the request is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court; (5) the foreseeability of the need for additional discovery in light of the time allotted by the district court; and (6) the likelihood that discovery will lead to relevant evidence." Childers v. Slater, 197 F.R.D. 185, 188 (D.D.C. 2000) (citing Smith v. United States, 834 F.2d 166, 169 (10th Cir. 1987)).

On balance, the Childers factors weigh in favor of reopening discovery to allow SAIC to discover evidence about NRC's continued use of SAIC's work product for the period after the close of discovery in 2006 until the present, but against reopening discovery for the issue of value before the close of discovery. The trial is not imminent because no new trial date has been set. This is not a request to reopen discovery on the eve of trial, but one made well in advance of the retrial. No time allotments have been made that would be upset by permitting limited relevant additional discovery, and it was the D.C. Circuit's opinion that prompted the request for the evidence.

While the government argues that it will be prejudiced by the request, the argument is unconvincing since this order can craft discovery limits that will avoid undue prejudice to the government.  Moreover, the minimal delay to the trial is significantly outweighed by the potential value that the evidence has to a central issue at retrial.

Most importantly, the discovery will also likely lead to relevant information.  While the government argues that the information that SAIC seeks has "little, if any, relevance to the determinations the jury will have to make on retrial," U.S. Opp'n at 23, the jury will be required to assess the value of SAIC's work to the government, should they find liability, in order to determine damages.  Any perceived continued use of SAIC's work may shape the jury's assessment of that value.  The information regarding the continued use of SAIC's work product after discovery closed in 2006 could help the jury to assess the magnitude of the damages that the government suffered, and there is no reason here not to allow SAIC to discover such evidence. See Fusco, 11 F.3d at 267 ("[T]here [is not] any general rule prohibiting a party from offering new evidence at a second trial[.]").  The government is certainly free to argue at trial that because "[t]he NRC bargained for advice and assistance in support of a rulemaking free from conflict of interest," SAIC's work had no value.  See U.S. Opp'n at 18; see also SAIC III, 626

F.3d at 1279-80 ("Of course, the government remains free to argue that the value of SAIC's advice and assistance was completely compromised by the existence of undisclosed conflicts . . . ."). However, since SAIC "must also be allowed to offer evidence to the contrary," id. at 1280, reopening discovery affords SAIC this opportunity.  Further, the discovery may also lead to relevant information for the government because it is ultimately the government's burden to prove damages, id. at 1279, which includes the value -- or lack thereof -- of SAIC's work to the government.

The Childers factors, though, do not support reopening discovery for the documents and evidence about value created before the close of discovery in 2006.  The government opposes such renewed discovery.  SAIC concedes that it had the opportunity to discover at least the pre-2006 information before the 2006 close of discovery.  See SAIC's Mem. at 8 ("[T]he parties were able to conduct discovery related to damages before the first trial, and the [c]ourt did not preclude them from doing so . . . ." (emphasis omitted)).  The need for evidence about the value of SAIC's work product should have been apparent from the outset of the litigation, and in fact was apparent since SAIC "sought to ascertain the nature and scope of NRC's continued use of its work product."  SAIC's Mem. at 5.  But these factors do not weigh against reopening discovery for the present value of SAIC's product.

Applying the manifest injustice standard yields the same result.  Barring SAIC from pursuing limited discovery regarding current value would subject it to a manifest injustice.  Keeping discovery closed would unduly impair SAIC's ability to contest the government's assertions regarding the present value of SAIC's product.  See Piper Aircraft Corp., 985 F.2d at 1450 ("[T]he court should allow sufficient leeway for the parties to produce new evidence, without undue prejudice to their interest."). Additionally, because this will not require "extensive additional discovery," and the evidence is not "cumulative and redundant of that which was produced before," the "balanc[e] of the value of the additional evidence with the need for judicial economy and the reasons that the case was remanded in the first place" favor allowing SAIC to engage in limited additional discovery.  See Piper Aircraft, 985 F.2d at 1450.  This approach will prevent a manifest injustice by limiting the burden that the government must bear in producing discovery, while also allowing SAIC the opportunity to discover relevant information.

Accordingly, SAIC will be permitted to take a 30(b)(6) deposition, limited to evidence of value from the 2006 close of discovery to the present; request documents created after the 2006 close of discovery "related to or reflecting the NRC's use of SAIC's work performed under the 1992 and 1999 Contracts and the NRC's use of NUREG-1640" and those that "evidence, support or

establish the damages allegedly incurred by the Government as a
result of the OCIs alleged in the complaint"; request
supplementation of any prior response to requests for documents
"upon which the Government intends to rely at trial (related to
damages)" which had not been produced earlier; request
supplementation of any prior response to any interrogatory
seeking the dollar amount and components and method of
calculation of each damage claim; and conduct one half-day
deposition of a new fact witness.  Both sides will be permitted
discovery of one additional expert per side.  Thus, it is hereby

ORDERED that SAIC's motion [207] for targeted discovery on
damages be, and hereby is, GRANTED IN PART and DENIED IN PART.
It is further

ORDERED that, as detailed above, SAIC is permitted to (1)
depose one Rule 30(b)(6) representative designated by the NRC,
limited to evidence about value dating from the 2006 close of
discovery forward; (2) conduct one half-day deposition of a new
fact witness about damages; (3) serve a request for documents
created after the 2006 close of discovery regarding current
value; and (4) request supplementation of any prior discovery
responses regarding the government's damages calculations and any
trial documents about damages.  It is further

ORDERED that each side will be permitted limited expert discovery (one expert per side) about the value of SAIC's work to the government.  It is further

ORDERED that all additional expert designations be made by March 4, 2014, and all additional discovery be completed by April 18, 2014.  It is further

ORDERED that the parties appear for a scheduling conference on April 22, 2014 at 9:45 a.m.

SIGNED this 19th day of December, 2013.


_____/s/_____
RICHARD W. ROBERTS
Chief Judge