UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

          Plaintiff,

     v.                                Civil No.  04-CV-1543 (RWR)

SCIENCE APPLICATIONS
INTERNATIONAL CORPORATION,

          Defendant.

**UNITED STATES OF AMERICA'S MEMORANDUM IN OPPOSITION
TO DEFENDANT SCIENCE APPLICATIONS INTERNATIONAL
CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON
<u>RECKLESS DISREGARD OR, IN THE ALTERNATIVE, MOTION IN LIMINE</u>**

The United States respectfully submits this brief in opposition to Defendant Science Applications International Corporation's (SAIC) Motion For Partial Summary Judgment on Reckless Disregard Or, In The Alternative, Motion In Limine.  (SAIC Motion For Partial Summary Judgment).  SAIC ignores the extensive record evidence and the numerous decisions on this very issue and yet again argues that the United States be precluded from presenting evidence of SAIC's reckless disregard to the extent this evidence is related to or references SAIC's "OCI Compliance System."  SAIC Motion For Partial Summary Judgment at 1.  Like the five prior times that SAIC has raised just this argument either with this Court or the Court of Appeals for the D.C. Circuit, SAIC's arguments should be rejected.  SAIC already filed a post-remand motion for summary judgment on its organizational conflicts of interest compliance system seeking summary judgment on the issue of reckless disregard and it was denied.[1]  SAIC did not seek leave to file a second summary judgment motion and no briefing schedule has been established for this motion, as was done in the previous two instances in which the Court considered summary judgment motions, nor has SAIC pointed to any new evidence or argument previously unavailable to SAIC in support of its arguments here.  For these reasons alone, SAIC's motion should be denied.

SAIC's motion should further be denied because this Court has already considered and ruled on a motion for summary judgment that "there is sufficient evidence for a jury to find that SAIC's compliance system did not allow SAIC to determine the truth or falsity of its claims and statements." Memorandum Opinion and Order at 31-33 (Doc. 206).  Nothing in SAIC's latest motion impacts the correctness of this decision.  Lastly, the very foundation of SAIC's latest motion-- that the United States must prove through expert testimony that SAIC's organizational

---

[1] As if to underscore the redundancy of its current motion, SAIC's Statement of Undisputed Material Facts offered in support of its Motion cuts and pastes numerous paragraphs that it previously submitted in support of its already-denied motion on the same topic.

conflict of interest compliance system fails to meet some national standard for organizational

conflict of interest compliance systems – is simply a strawman erected by SAIC in the hopes of

trying once again to eliminate damaging evidence demonstrating that it recklessly submitted

false claims to the NRC.  The relevant question is not how SAIC's organizational conflicts of

interest compliance system may have compared to other government contractors.  Rather, the

relevant question for the jury is whether SAIC's organizational conflicts of interest compliance

system as designed, implemented, and used by SAIC  prevented SAIC from determining the

truth or falsity of its claims and statements and whether, therefore, a jury could properly

conclude that SAIC's design, use, and implementation of its system demonstrated reckless

disregard or deliberate ignorance with regard to its numerous false certifications to the NRC that

SAIC had no conflicts of interest.  Because, as this Court and the Circuit Court have already

concluded, a jury could so conclude based on the record evidence, SAIC's Motion should be

denied in its entirety.

## FACTUAL BACKGROUND

### SAIC's Summary Judgment Motion

On April 7, 2011, following the remand of this case from the Court of Appeals from the

U.S. Circuit Court for the District of Columbia Circuit, this Court entered a Scheduling Order

establishing the dates by which both parties were to file post-remand Summary Judgment

motions and oppose those motion.  Scheduling Order, April 7, 2011 (Document 194).[2]

On June 23, 2011, SAIC filed a Motion for Summary Judgment on False Claims Act

Liability (Doc. 196) (2011 Motion for Summary Judgment).   In its 2011 Motion for Summary

Judgment, SAIC argued that no reasonable jury could find that SAIC's structure or compliance

---

[2]      The Court had similarly issued a pre-trial scheduling order that governed the schedule for filing and briefing summary judgment on the previous two rounds of such motions.

system demonstrated that the company acted with reckless disregard or deliberate ignorance. 2011 Motion for Summary Judgment (Doc. 196) at pp. 30-41.

The United States opposed SAIC's summary judgment motion and demonstrated, based on documents and non-expert testimony that had been admitted into evidence at the first trial in this matter, that a genuine dispute of material fact existed regarding whether SAIC had acted recklessly or with deliberate ignorance relative to its well-defined OCI obligations. United States Opposition to Defendant SAIC's Motion for Summary Judgment on False Claims Act Liability (Doc. 199) at 35-38.

On July 22, 2013, this Court denied SAIC's 2011 Motion For Summary Judgment. Doc. 206 at 53. The Court, for the fifth time,[3] considered the entirety of SAIC's arguments with respect to its self-described state-of-the-art organizational conflict of interest compliance system and, like the Circuit Court, concluded that "it has already been determined that there is sufficient evidence for a jury to find that SAIC's compliance system did not allow SAIC to determine the truth or falsity of its claims or statements." Doc. 206 at 33. Accordingly, the Court rejected SAIC's arguments and denied its motion. *Id.*

SAIC did not seek reconsideration of the Court's Opinion. Instead, it waited more than 10 months, until the eve of a trial scheduling conference, to file yet another motion for summary judgment again seeking to preclude evidence of the inadequacies or deficiencies in its organizational conflict of interest system. SAIC, however, offers nothing new under the sun; each of its arguments and all of the evidence it offers either was or could have been brought in its five previous motions on the same topic. Moreover, SAIC did not seek leave from the Court to

---

[3] SAIC had previously advanced this argument or variations thereof in support of: (1) its 2007 Motion for Summary Judgment; (2) its Rule 50 argument made at trial at the close of the United States' case; (3) its Motion for Judgment as a Matter of Law or for a New Trial made after the Court entered judgment for the United States; and (4) its appeal to the D.C. Circuit.

file yet another motion for summary judgment and, unlike other instances of summary judgment

filings, no briefing schedule was sought, nor has one been adopted by the Court.[4]

## ARGUMENT

### A.     SAIC's Motion Should Be Denied as Redundant and Untimely.

This case was remanded from the Circuit Court more than three years ago.  SAIC has

already been given an opportunity to make, and has made, the same arguments with respect to its

organizational conflicts of interest compliance system.  *See, e.g.*, Doc. 206 at 33.  Those

arguments have been rejected.  *Id.*  There is nothing about SAIC's latest arguments that could not

have been and was not raised previously.  The United States did not have an expert on

organizational conflicts of interest compliance systems in the first trial and has never indicated a

need or desire for one for the second trial.[5]  SAIC waited until after the end of its unilateral

supplemental discovery period (that had nothing to do with organizational conflicts of interest

compliance systems) to file what, at best, can be characterized as a very tardy motion for

reconsideration.  SAIC did not seek leave for such a filing and did not seek an amended

---

[4]     When SAIC counsel first considered the post-remand schedule in discussions with the United States, they proposed another lengthy period for briefing of the sort just filed by SAIC. The United States opposed such a period on the grounds that trial date needed to be set and summary judgment motions had already been filed, opposed and ruled upon.  See Exhibit 1 attached hereto.  Then, when appearing before the Court for a scheduling conference, SAIC counsel failed to raise the need for additional time for dispositive motions and, when asked a direct question by the Court about schedule, replied: "And I think, you know, in 120 days we can get that finished.  And then what I would propose is 30 days after that; expert reports…..and then we would be prepared to go to trial in the early part of '14, and we're prepared to set a trial date in that period today."  September 5, 2013 Scheduling Conference Transcript at 7.  Despite that statement, in the ensuing briefing on schedule, SAIC counsel did not make any attempt to seek time for extensive post-remand discovery briefing for another go round.  Instead, counsel waited until after discovery (on completely unrelated topics) had concluded; and then filed these motions with no schedule and no leave of court.

[5]     Indeed, the Court's December 19, 2013 Memorandum Opinion and Order made clear that the only new experts permitted before the retrial were on the subject of the "value of SAIC's work to the government."  Doc. 210.

scheduling order.  The United States is prejudiced by such delays and frivolous re-arguments of the same matters that have already been decided, based on evidence that has already been fully considered.  For this reason alone, SAIC's motion should be denied.

**B.**      **SAIC's Motion Should Be Denied Because This Court Has Already Ruled that SAIC's Recklessness and Deliberate Ignorance Should Be Presented To A Jury**

There has already been a trial in this case.  Evidence has already been presented to a jury with respect to the shortcomings of the manner in which SAIC designed and utilized its OCI compliance system to comply with its material OCI obligations.  *See* United States' Responsive Statement of Genuine Issues and Material Facts in Support of Its Memorandum in Opposition to SAIC's Motion For Summary Judgment On Reckless Disregard Or, In the Alternative, Motion in Limine (Responsive Statement) at ¶¶ 3, 23, 25, 27-31.  Although SAIC now appears to argue that a jury cannot conclude that SAIC's organizational conflicts of interest compliance system was designed and implemented recklessly or with deliberate ignorance without expert testimony, SAIC does not, and cannot, point to a single piece of that evidence that was objected to as "beyond the realm of a layperson's knowledge" and therefore "required expert opinion."  *See* Federal Rule of Evidence 702.  To the contrary, the evidence was presented at trial and was properly considered and assisted the jury in reaching a verdict against SAIC.  *See* Doc. 206 at 33. Subsequent to the verdict, and using the same arguments about its purportedly "superior" organizational conflict of interest compliance system, SAIC has tried on at least three occasions to convince either this Court or the Circuit Court that the United States should not be permitted to obtain the same verdict with this evidence on retrial.  *See, e.g., id.*  Each time this argument has been rejected.  Both this Court and the Circuit Court have already concluded, all of this evidence, taken together with the failure of SAIC's routing system to identify the relationships that the jury necessarily determined to be organizational conflicts of interest, is more than

sufficient to create a genuine issue of material fact as to whether SAIC acted with reckless

disregard or deliberate ignorance.  SAIC's sixth attempt to generate a different result must be

rejected.

**C.      SAIC's Motion Should Be Denied Because It is Not Relevant, and
         Certainly Not Dispositive, How SAIC's Organizational Conflicts
         <u>of Interest Compliance System Compares to Some National Standard</u>**

SAIC's motion argues that the United States should be barred from presenting evidence

to the jury at trial to show that it acted recklessly and with deliberate ignorance because the

United States has not proffered an expert on organizational conflicts of interest compliance

systems to testify about what the standard for organizational conflicts of interest compliance

systems is and that SAIC's system fails relative to that standard.[6]  SAIC's Memorandum in

Support of Motion for Partial Summary Judgment (SAIC Memo) at 2-4.  SAIC's argument

completely misses the mark.

This case, as opposed to the negligence cases relied upon by SAIC for the proposition

that expert testimony is required, does not require the establishment by expert testimony of an

objective national standard, nor does it require an assessment of SAIC's system against that

standard.  Instead, the relevant question in this case is whether SAIC's system, as designed, used,

and implemented, "did not allow SAIC to determine the truth or falsity of its claims or

statements" about those OCI obligations.  Doc. 206 at 33.  The non-expert evidence at trial was,

and will be, that SAIC's structure and systems, as designed and used, prevented the sharing of

information that would make organizational conflicts of interest known and that communication

---

[6]      The cases cited by SAIC, *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630
F.3d 217, 225 (D.C. Cir. 2011) and *Briggs v. Wash. Metro Area Transp. Auth.*, 481 F.3d 839,
845 (D.C. Cir. 2007), are tort cases sounding in negligence and applying DC tort law in which
the plaintiff bore a typical negligence plaintiff's duty to establish both an objective and
applicable standard and a breach of that standard.  These cases are simply inapplicable to the
situation here where SAIC's recklessness and deliberate ignorance flow from its well-established
and material OCI obligations under its contracts with the Nuclear Regulatory Commission.

between different SAIC organizations was "very, very poor," even to the extent that one

organization might not know that another SAIC organization was working in the same technical

area or on a similar matter.  *See* United States' Responsive Statement of Genuine Issues and

Material Facts in Support of Its Opposition to SAIC's Motion for Summary Judgment on False

Claims Act Liability (2011 SGIMF) (Doc. 199) at ¶¶ 59, 64.[7]  As the Circuit Court noted, this

compartmentalization of knowledge is precisely what Congress had in mind when it defined

knowledge under the False Claims Act to include reckless disregard and deliberate ignorance.

*U.S. v. SAIC,* 626 F. 3d 1257, 1275-76 (D.C. Cir. 2010).  Particularly given the multitude of

other SAIC employees who knew that SAIC had potential organizational conflicts of interest, a

jury could reasonably conclude that SAIC's utter failure to share that information with the two

individuals actually responsible for making organizational conflicts of interest certifications

amounted to deliberate ignorance or reckless disregard.  2011 SGIMF at ¶¶ 71-89, 215-221.

This is not a case where objective "standards of care" of the sort referenced in SAIC's citations

are even relevant.  Rather, SAIC had an obligation to subjectively implement and follow a

system that considered and detected organizational conflicts of interest of the sort prohibited by

NRC's regulations.  SAIC could have had the best nationwide system for detecting

organizational conflicts of interest but it would be reckless and deliberately ignorant with regard

to its representations to the NRC if the system lacked critical components that would allow SAIC

to identify, avoid, and disclose the relationships that SAIC specifically, repeatedly, and falsely

certified that it did not have.  SAIC never certified to the NRC that it had a good organizational

conflicts of interest system – it certified that it did not have relationships identified and

prohibited by NRC regulations.

---

[7]     Indeed, the evidence at trial will be that SAIC even failed to follow its own policies and procedures relative to organizational conflicts of interest thereby making the use of this system even more reckless.  Responsive Statement at ¶¶ 28 and 29.

The evidence that SAIC now seeks to exclude has been admitted and properly considered by the jury in reaching a verdict that SAIC knowingly violated its organizational conflict of interest obligations to the NRC.  This Court and the Circuit Court have considered this evidence and held that, without expert testimony, it is sufficient for the jury to have found that SAIC acted with knowledge under the False Claims Act.  SAIC's new attempt to exclude it must fail so that the jury on retrial can properly consider all of the relevant information in assessing whether SAIC's organizational conflicts of interest system failed to make "reasonable and prudent" inquiries regarding the truth or falsity of its many certifications to the NRC that it lacked conflicts of interest.  *See, e.g., United States v. Bourseau*, 531 F.3d 1159, 1168 (9th Cir. 2008).

<u>**CONCLUSION**</u>

SAIC seeks for the sixth time to have a court preclude the jury from learning the truth regarding its reckless and deficient operation of its organizational conflicts of interest system.  Its efforts should be rejected so that the jury can consider the full extent of the inadequacies and insufficiencies in SAIC's implementation and operation of its system and its reckless promises to the NRC that no conflicting relationships existed.

Respectfully Submitted,

STUARTY F. DELERY
ASSISTANT ATTORNEY GENERAL


*/s/ Daniel Hugo Fruchter*
MICHAEL D. GRANSTON
TRACY HILMER
DONALD J. WILLIAMSON
DANIEL HUGO FRUCHTER
Attorneys
Civil Division
U.S. Department of Justice
P.O. Box 261
Ben Franklin Station
Washington, D.C.  20044
Telephone:  (202) 305-2035

Attorneys for Plaintiff United States of America


Dated: May 5, 2014