**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 04-cv-1543 (RWR) |
| | ) | |
| LEIDOS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT LEIDOS, INC.'S MOTION
FOR PARTIAL SUMMARY JUDGMENT ON RECKLESS DISREGARD
OR, IN THE ALTERNATIVE, MOTION IN LIMINE**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................3

I.      This Court Has Never Before Considered Whether The Government Can Meet Its
        Burden Of Proof Without Expert Evidence On OCI Compliance Systems.......................3

II.     SAIC Is Entitled To Summary Judgment On Reckless Disregard. ...................................5

        A.      The Government's Response Fails To Contest SAIC's Statement Of
                Undisputed Material Facts, Conceding The Key Facts For This Motion. ..............5

        B.      The Government's Reckless Disregard Theory Cannot Be Sustained
                Without Expert Evidence. ......................................................................................8

                1.      Evaluating The Adequacy Of SAIC's OCI Compliance
                        Systems Requires Expert Evidence. .................................................9

                2.      The Government's Theory Subjects SAIC To Strict
                        Liability For Failing To Identify Alleged OCIs, Which Is
                        Not The Law. .............................................................................10

        C.      The Reckless Disregard Theory Cannot Stand In The Face Of Undisputed
                Expert Evidence. ...................................................................................................13

III.    The Government Failed Entirely To Address SAIC's Alternative Motion In
        Limine, So If The Court Denies SAIC's Summary Judgment Motion, It Should
        Grant SAIC's Motion In Limine. .....................................................................................15

CONCLUSION.....................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) ................................................................................................ 14

\* Banner Health v. Sebelius,
905 F. Supp. 2d 174 (D.D.C. 2012) ............................................................... 1, 10, 15

Beard v. Goodyear Tire & Rubber Co.,
587 A.2d 195 (D.C. 1991) ....................................................................................... 14

Beck v. Test Masters Educ. Servs. Inc.,
Civil No. 1:04-cv-01391 (RCL), 2013 WL 6668736 (D.D.C. Dec. 18, 2013) ...... 4

Briggs v. Goodwin,
698 F.2d 486 (D.C. Cir. 1983) ............................................................................ 5, 8

\* Briggs v. Wash. Metro. Area Transp. Auth.,
481 F.3d 839 (D.C. Cir. 2007) ............................................................................ 9, 14

Canning v. U.S. Dep't of Defense,
499 F. Supp. 2d 14 (D.D.C. 2007) ........................................................................... 7

Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.,
630 F.3d 217 (D.C. Cir. 2011) ............................................................................... 14

Morgan v. Barry,
785 F. Supp. 187 (D.D.C. 1992) ............................................................................... 4

Nat'l Bank & Loan Co. of Watertown v. Petrie,
189 U.S. 423 (1903) .................................................................................................. 9

Nat'l Tel. Coop. Assoc. v. Exxon Corp.,
38 F. Supp. 2d 1 (D.D.C. 1998) ............................................................................. 14

\* Quintana-Ruiz v. Hyundai Motor Corp.,
303 F.3d 62 (1st Cir. 2002) .......................................................................... 6, 13, 14

Tacka v. Georgetown Univ.,
193 F. Supp. 2d 43 (D.D.C. 2001) ............................................................................ 4

\* United States v. Sci. Applications Int'l Corp. (SAIC),
626 F.3d 1257 (D.C. Cir. 2010) ...................................................................... passim

Williams v. District of Columbia,
530 F. Supp. 2d 119 (D.D.C. 2008) ....................................................................... 14

**Other Authorities**

S. Rep. No. 99-345 7 (1986) .................................................................................... 11

**TABLE OF AUTHORITIES** *(continued)*

<u>Page(s)</u>

**Rules**

Local Rule 7(h) ................................................................................................................. 2

Local Rule 7(l) .................................................................................................................. 3

**INTRODUCTION**

Rather than responding to the serious legal arguments made by Leidos, Inc. in its motion for partial summary judgment on reckless disregard, the government attempts to hide behind the parties' prior summary judgment briefings. But the Court has never before considered the precise question presented here: whether the government can meet its burden of proof without expert evidence to assist the jury in determining whether SAIC's organizational conflict of interest ("OCI") compliance systems were *so deficient* that they demonstrated reckless disregard for OCIs. The Court has never ruled on whether the sufficiency of OCI compliance systems used by government contractors in the 1990s is a matter within the everyday knowledge of lay people. And the Court has never considered SAIC's argument that the jury is not free to disregard the uncontroverted expert opinions SAIC has proffered that its OCI compliance systems were state-of-the-art.

The government's response fails completely to offer any contrary authority to the arguments in SAIC's motion—not one legal authority is cited outside of this case, and this Court's previous decisions did not consider the legal arguments presented in this motion or the comprehensive opinions from SAIC's two experts. In so-doing, the government has conceded the great bulk of SAIC's arguments. *See Banner Health v. Sebelius*, 905 F. Supp. 2d 174, 185 (D.D.C. 2012) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (citation omitted).

The most the government does to contest SAIC's legal arguments is wave away the comprehensive authorities supporting SAIC's motion on the grounds that they are tort law cases. But SAIC cited to multiple federal statutory cases in which this principle was applied, *see* Dkt. 214-1: Mem. in Supp. of Def. Leidos, Inc.'s Mot. for Partial Summ. J. on Reckless Disregard or,

in the Alternative, Mot. in Limine ("S.J. Mot.") at 12–13, and whether a cause of action sounds

in tort or statute, the issue—what is beyond the ken of lay jurors—is the same.  Moreover, fraud

*is* a tort, and the D.C. Circuit plainly invoked tort law principles in analogizing "reckless

disregard" to "aggravated gross negligence."  *United States v. Sci. Applications Int'l Corp.*

*(SAIC)*, 626 F.3d 1257, 1275 (D.C. Cir. 2010).  The government does not in any meaningful way

cast doubt on the correctness and validity of SAIC's legal arguments.

The government also fails to produce evidence to dispute the facts asserted in SAIC's

Statement of Undisputed Material Facts, effectively conceding them as true for the purposes of

this summary judgment motion.  *See* Local Rule 7(h).  Accordingly, the Court has a summary

judgment record that consists of the government *asserting*—but only asserting—that SAIC

showed reckless disregard toward its OCI obligations.  But mere assertions in briefing papers do

not manufacture a genuine dispute of material fact.  The government has no expert to testify

about the standards required for OCI compliance systems, generally or specifically related to the

Nuclear Regulatory Commission ("NRC"); it has no expert to testify about how SAIC's OCI

compliance systems compared to the required standard; it has only lay testimony regarding what

the government argues are imperfections in SAIC's systems.  Opposed to this are undisputed

expert opinions that SAIC's OCI compliance systems substantially exceeded the industry

standard.  The government's case cannot proceed under a reckless disregard theory, and it would

be a total waste of this Court's time and resources[1] to allow the government to present its case to

the jury in order to arrive at the same place that we are right now—the government presenting

---

[1] The government intends to call "approximately 18 witnesses" in its case-in-chief, which
could be substantially limited without the availability of a reckless disregard theory of
scienter.  *See* 4/29/14 Tr. at 9.

what amounts to a case of strict liability to prove that SAIC as an institution "recklessly disregarded" OCI risks, which is opposed by undisputed expert opinion establishing that SAIC's OCI compliance systems were state-of-the-art.  This Court should, therefore, enter partial summary judgment for SAIC on the government's reckless disregard theory.

## ARGUMENT

### I.   This Court Has Never Before Considered Whether The Government Can Meet Its Burden Of Proof Without Expert Evidence On OCI Compliance Systems.

The core of the government's response is that this Court has already considered the sufficiency of the government's scienter evidence and found against SAIC, so it should not revisit those issues, and that this motion is untimely.  *See* Dkt. 218: United States of America's Mem. in Opp'n to Def. SAIC's Mot. for Partial Summ. J. on Reckless Disregard or, in the Alternative, Mot. in Limine ("Opp'n") at 5–7.  First, this motion is timely.  Local Rule 7(l) permits filing of a pretrial dispositive motion at any time, so long as it is filed "sufficiently in advance of the pretrial conference [so] that it may be fully briefed and ruled on before the conference."  This Court has not set a pretrial conference for the retrial of this case, and filing of this paper concludes the briefing on the motion, so this Court has ample time to rule on it before the pretrial conference.  Additionally, there is no operative scheduling order, thus the local rule governs.  And contrary to the government's suggestion, neither the local nor federal rules require a party to seek leave from the court prior to filing a motion for summary judgment.

The government also argues that this motion has already been considered by this Court and the D.C. Circuit.  *See* Opp'n at 6–7.  That plainly is untrue—what this motion presents is an entirely new legal argument, flowing from the fundamental refocus of the False Claims Act scienter requirements by the D.C. Circuit's opinion and this Court's summary judgment rulings post-remand.  The Court should consider SAIC's new argument because this case has evolved

significantly.  The government's complaint did not assert a theory of reckless disregard based on SAIC's OCI compliance systems, *see* Dkt. 35: Am. Compl., but the D.C. Circuit's opinion—followed by this Court's most recent application of that new law—has made SAIC's OCI compliance systems a central issue.  The fact that SAIC did not call either Mr. McWhirter or Mr. Wilkins to testify demonstrates that the focus of the case was not about the OCI compliance systems at that time, but it is now and therefore deserves more scrutiny.

Though the government never specifically invokes "law of the case" doctrine, to the extent its response can be taken as asserting that the doctrine prevents this Court from entertaining this motion, it is incorrect—the previous decisions of this Court never addressed the issue presented in SAIC's motion; therefore, law of the case does not apply.  *See Tacka v. Georgetown Univ.*, 193 F. Supp. 2d 43, 49–50 (D.D.C. 2001) (explaining that law of the case does not apply when subsequent motions for summary judgment raise new grounds not previously considered by the court).  Moreover, law of the case doctrine is concerned with efficiency and is intended to prevent the endless re-litigation of *the same* issues—and judicial efficiency very much points in favor of, not against, this Court considering these issues now.  *See Morgan v. Barry*, 785 F. Supp. 187, 191 (D.D.C. 1992) ("Law of the case is designed to promote judicial efficiency and the judicious resolution of claims."); *Beck v. Test Masters Educ. Servs. Inc.*, Civil No. 1:04-cv-01391 (RCL), 2013 WL 6668736, at *3 (D.D.C. Dec. 18, 2013) ("the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same* result") (citation omitted).

Without a theory of reckless disregard based on SAIC's OCI compliance systems, the government's case boils down to two relationships that could be possible OCIs, limited by Michael McKenzie-Carter's actual knowledge in 1999.  *See* Dkt. 213: Def. Leidos, Inc.'s Mot. in

Limine to Enforce This Court's July 22, 2013 Partial Summ. J. Order Regarding SAIC's

Scienter.  If the theory of reckless disregard *is* available to the government, its case involves five

or more relationships from the years 1992 to 1999 and likely 18 witnesses.  When presented with

a new and valid legal argument that would remove reckless disregard from this case, saving this

Court and the parties tremendous time and resources, it would make little sense to refuse to

consider it in the name of judicial efficiency.  The legal arguments presented in SAIC's motion

have merit, and this Court can and should consider them *now*, rather than later.

## II.  SAIC Is Entitled To Summary Judgment On Reckless Disregard.

### A.  The Government's Response Fails To Contest SAIC's Statement Of Undisputed Material Facts, Conceding The Key Facts For This Motion.

In its response to SAIC's Statement of Undisputed Material Facts (Dkt. 214-2)

("SUMF"), the government has failed to properly dispute almost every fact asserted.  Of

particular note, the government admits that it did not designate an expert witness to evaluate

SAIC's OCI compliance systems, and—most remarkably—"it is undisputed that the United

States did not seek to establish a general standard of care for organizational conflict of interest

systems."  Dkt. 218-1: United States' Responsive Statement of Genuine Issues and Material

Facts in Support of Its Opp'n ("SUMF Opp'n") ¶ 5.  Thus, the Government *concedes* that it has

no evidence to establish a standard of care for OCI compliance systems, nor does it have any

experts to testify about SAIC's OCI compliance systems.

Just as importantly, the government has failed to rebut the expert opinions presented by

both Charles Wilkins and Calvin McWhirter.  While the government may not like the expert

opinions, "mere protestations that the facts are different or are in dispute" will not create a

genuine issue of material fact at summary judgment.  *See Briggs v. Goodwin*, 698 F.2d 486, 489

n.2 (D.C. Cir. 1983).  The government attempts to avoid the consequence of its failure of proof

by attacking SAIC's experts, saying that the experts have presented "opinion and not fact." *See* SUMF Opp'n ¶¶ 23, 25, 27–29. First, it is the government, not SAIC, which bears the burden of proof in this case—it can poke and criticize SAIC's experts all it wants, but the government is the party that has *conceded* it does not have evidence to meet its burden of presenting expert evidence. *See* SUMF Opp'n ¶¶ 4–6. Second, it is no rebuttal to say that the experts present just an opinion. As SAIC pointed out in its motion, juries are not free to disregard uncontested expert opinions without reason, and even though both Charles Wilkins and Calvin McWhirter were deposed in this case,[2] the government's response presents no reason from those depositions to disregard either their expertise or their opinions. *See Quintana-Ruiz v. Hyundai Motor Corp.*, 303 F.3d 62, 76–77 (1st Cir. 2002) (holding that uncontradicted expert opinion about a matter outside the ken of the average lay person cannot be rejected by the jury).

The government also attempts to discredit both experts as having been dismissed by this Court, mischaracterizing this Court's pretrial rulings. *See* SUMF Opp'n ¶¶ 13, 15. The Court did rule, "preliminarily," 6/18 a.m. Tr. at 25, to preclude evidence of Mr. McWhirter's audit of SAIC's OCI compliance systems conducted while he worked at the Environmental Protection Agency ("EPA"), but since SAIC did not again attempt to introduce Mr. McWhirter's testimony, the issue was never fully resolved and this Court is not bound by that ruling. The government had argued that Mr. McWhirter's opinions, as an OCI compliance expert, were irrelevant because he was applying EPA rules, not NRC rules, when he conducted the EPA audit, *id.* at 15–16; however, there is no merit to this distinction, as the concept of an OCI is the same across the

---

[2] The government also states that Calvin McWhirter was not designated as an expert. This is incorrect. SAIC's pretrial witness list denotes him with an (*), indicating an expert witness—he was a hybrid fact and expert witness. *See* Dkt. 94-3: SAIC's Witness Schedule at 6.

entire government contracting industry—all stemming from the Federal Acquisition Regulation ("FAR"), which defines the concepts and basic rules.[3]  *See* Dkt. 214-6: S.J. Mot. Ex. A, Attach. 1 at 4–5 (explaining that FAR regulations are the general framework for all government contracting).  Mr. McWhirter is an OCI compliance expert; he conducted an audit of SAIC's OCI compliance systems concurrent with the events underlying this lawsuit; he was hired *by the United States* to perform this function; and the government presents no evidence to show that NRC OCI rules are so singularly unique such that his opinions would be irrelevant to the jury's evaluation of SAIC's OCI compliance systems.  The Court can and should consider Mr. McWhirter's opinions.

As to Mr. Wilkins's testimony, the government is simply wrong to say that the Court precluded his testimony, which it expressly allowed.  *See* 7/1 a.m. Tr. at 13.  Mr. Wilkins was precluded only from opining on the NRC's purposes behind its regulations, not from offering his opinions on SAIC's OCI compliance systems.  *Id.*  In any event, mixing in these legal arguments to rebut the expert opinions is insufficient to contest the facts asserted in SAIC's SUMF.  *See Canning v. U.S. Dep't of Defense*, 499 F. Supp. 2d 14, 16 (D.D.C. 2007) (deeming facts admitted because the opposing party "blend[s] factual assertions with legal arguments" in its SUMF response) (citation omitted).

Moreover, all of these technical and legalistic attacks do not establish a genuine issue of material fact, nor do they effectively contest the expert opinions presented by SAIC.  *See*

---

[3]  Indeed, after its preliminary ruling on Mr. McWhirter, the Court considered and denied the government's later motion in limine challenging Mr. Wilkins's testimony, in which the government abandoned its argument that only NRC-specific experts could give relevant testimony about OCI compliance systems.  *See* 7/1 a.m. Tr. at 13; Dkt. 108: Pl. United States of America's Mot. in Limine to Exclude Op. Test. From Trial at 10–13.

*Goodwin*, 698 F.2d at 489 n.2.  SAIC asserts (with citations to admissible evidence) that government contractors vary widely in how they manage OCI compliance; the government states this fact is "[d]isputed," but presents no contrary evidence.  SUMF Opp'n ¶ 22.  Similarly, SAIC asserts (with citations to admissible evidence) that its systems were more comprehensive than others'; the government states this fact is also "[d]isputed," but again presents no contrary evidence.  *Id.* ¶ 23.  SAIC asserts (with citations to admissible evidence) that its systems did not include certain future business opportunities, which was customary practice, that the OCI system must balance burdens on the government with effectiveness and efficiency, that its systems contained elements more advanced than its peers, and that it was an industry leader; the government states to each of these facts that it is "[d]isputed," but yet again presents no contrary evidence.  *Id.* ¶¶ 24–31.  Disagreeing about relevance does not put a fact into dispute.

Accordingly, the Court is left with exactly the factual record upon which SAIC based its motion: the government without *any* proof of a relevant standard and without *any* expert testimony about SAIC's OCI compliance systems, stacked against SAIC's presentation of two expert opinions that SAIC's OCI compliance systems were far from showing aggravated gross negligence to OCIs.

### B.    The Government's Reckless Disregard Theory Cannot Be Sustained Without Expert Evidence.

In this case, the government is charging SAIC with fraudulent conduct, a charge SAIC takes very seriously and which can result not only in treble damages and civil penalties, but also in suspension from government contracting, not to mention the damage it does to its general business reputation.  To prove fraudulent conduct, the government cannot skirt the most essential element of any fraud, which is knowledge of falsity.  The D.C. Circuit's opinion in this case very clearly laid out the concern that it had with the jury verdict rendered in the last trial: "the jury

might well have accepted SAIC's arguments that its compliance system was generally adequate and that individual employees with knowledge of the company's conflicting business relationships honestly and reasonably believed that these relationships created no potential conflicts" and yet still might have found SAIC liable under the False Claims Act. *SAIC*, 626 F.3d at 1276. This, along with its instruction to strictly enforce the scienter elements, using an "aggravated gross negligence" standard for reckless disregard, raises the fundamental question— how is the jury to consider the adequacy of SAIC's OCI compliance systems and what standards should it use?

### 1.   Evaluating The Adequacy Of SAIC's OCI Compliance Systems Requires Expert Evidence.

In its motion, SAIC laid out the general law that when a jury is confronting matters "so distinctly related to some science, profession or occupation as to be beyond the ken of the average lay person," courts require expert evidence to educate the jury on the proper standards that should apply. *Briggs v. Wash. Metro. Area Transp. Auth.*, 481 F.3d 839, 845 (D.C. Cir. 2007). The closest the government comes to addressing the authorities presented by SAIC is to assert that because they are simply "tort cases sounding in negligence," they are "inapplicable." Opp'n at 7 n. 6. The government does not address at all, however, the various authorities SAIC cited that have applied the same requirement of proof in dealing with areas of scientific, technical, or specialized knowledge in federal statutory cases, not just tort cases, so the government's argument fails out of the gate to respond to the breadth of authority cited by SAIC. *See* S.J. Mot. at 12–13. Moreover, this is hardly a valid critique of those tort-based authorities because common law fraud, of which the False Claims Act is a statutory species, *is* a tort. *See SAIC*, 626 F.3d at 1274 (False Claims Act is "a law designed to punish and deter fraud"); *Nat'l Bank & Loan Co. of Watertown v. Petrie*, 189 U.S. 423, 425 (1903) ("fraud is a tort"). As the

D.C. Circuit explained, the reckless disregard standard is akin to "aggravated gross negligence," which invokes tort principles.  *SAIC*, 626 F.3d at 1275.  Thus, in order to prove "aggravated gross negligence," *id.*, the government must prove that SAIC failed dramatically to meet the standard of care for OCI compliance systems.  Whether the issue is beyond the ken of the lay juror does not turn on whether a claim sounds in tort or arises under statute.  *See* S.J. Mot. at 12–13 (citing cases applying this principle in deciding dispositive motions about both federal statutory and tort claims).

SAIC explained why OCI compliance systems are matters beyond the ken of the average person, noting that the historical context of this case (communications systems from the 1990s), the complex organizational structure of SAIC and the OCI compliance systems, the technical compliance rules set out in the FAR, and the substance of the work communicated about within the OCI compliance systems put this outside the common knowledge of a jury.  *See* S.J. Mot. at 14–17.  The government does not refute any of these points, so SAIC takes as conceded that it agrees that these aspects of the systems are beyond the ken of the average person.  *See Banner Health*, F. Supp. 2d at 185.  Instead, the government rejects the underlying law (though without support), hinging its argument entirely on whether some objective standard needs to be established against which SAIC's OCI compliance systems should be measured.  *See* Opp'n at 7.

### 2.    The Government's Theory Subjects SAIC To Strict Liability For Failing To Identify Alleged OCIs, Which Is Not The Law.

In the government's attempt to explain why its case does not require it to establish a standard of care for OCI compliance systems, the government articulately demonstrates the profound unfairness in its reckless disregard theory against SAIC, which would subject SAIC to strict liability.  It states that SAIC is liable *for fraud* because "SAIC never certified to the NRC that it had a good organizational conflicts of interest system – it certified that it did not have

relationships identified and prohibited by NRC regulations."  Opp'n at 8.  In other words,

because SAIC failed to detect certain alleged OCIs, it had shown reckless disregard to OCI

compliance.  The government fully embraces this bold expansion of False Claims Act liability:

> This is not a case where objective "standards of care" of the sort referenced in
> SAIC's citations are even relevant.  Rather, SAIC had an obligation to
> subjectively implement and follow a system that considered and detected
> organizational conflicts of interest of the sort prohibited by NRC's regulations.
> SAIC could have had the best nationwide system for detecting organizational
> conflicts of interest but it would be reckless and deliberately ignorant with regard
> to its representations to the NRC if the system lacked critical components that
> would allow SAIC to identify, avoid, and disclose the relationships that SAIC
> specifically, repeatedly, and falsely certified that it did not have.

*Id.*  According to the government, it *does not matter* whether SAIC had a state-of-the-art system

because if it failed to have a system designed perfectly to find all possible OCIs, it has defrauded

the government.  *Id.*  That interpretation of the False Claims Act is radically over expansive,

wrong, and cannot be squared with the D.C. Circuit's decision.

The D.C. Circuit, far from suggesting that perfect compliance is required of government

contractors, explained that the amendments to the False Claims Act which included "reckless

disregard" as satisfying the knowledge requirement were calibrated "to punish and deter fraud"

and *not* to "'punish[] honest mistakes or incorrect claims submitted through mere negligence'" or

to "impos[e] 'a burdensome obligation' on government contractors rather than a '*limited duty to

inquire.*'"  *SAIC*, 626 F.3d at 1274 (quoting S. Rep. No. 99-345 at 7 (1986)) (emphasis added).

The government's position, based on no standard whatsoever, expands the False Claims Act far

beyond Congress's intended scope as specifically described by the D.C. Circuit.

*        *        *

When the D.C. Circuit returned this case for trial, it did so with two fundamental

premises—(1) an implied false certification theory of False Claims Liability is valid when based

on material elements of the contracts; (2) however, because of the potential for overreach, the

11

Court must strictly enforce the scienter and materiality requirements of the False Claims Act.
*SAIC*, 626 F.3d at 1270.  This flows from the recognition that to subject a government contractor
to treble damages, civil penalties, and potential suspension or debarment, the government must
prove truly wrongful conduct, not just negligence—the False Claims Act is punitive, not just
compensatory.  *Id.* at 1274–75.  But evidence to prove this wrongful mental state on the part of
SAIC is what is wholly lacking in the government's case for reckless disregard: how *should*
SAIC have structured its OCI compliance system and *why* is what it did so far below reasonable
standards such that SAIC demonstrated "aggravated gross negligence" or "deliberate
ignorance?"

The government argues that it does not need to establish some "objective national
standard," Opp'n at 7, because the standards "flow from [SAIC's] well-established and material
OCI obligations under its contracts with the Nuclear Regulatory Commission," in essence
arguing that because NRC's OCI definitions are specialized (which in any event is incorrect), the
government is not obligated to introduce expert testimony.[4]  *Id.* at 7 n. 6.  The government
suggests there are "critical components" to an acceptable OCI compliance system, Opp'n at 8—
but which components are critical and why?  Are they in NRC regulations?  Are they embedded
in an expert's testimony laying out what the NRC OCI obligations require in order to reasonably
"determine the truth or falsity" of certifications about OCIs?  Even accepting that there might be
a competing standard of care from what SAIC's experts have asserted, the government is not
absolved of the fundamental law that matters beyond the ken of lay jurors require *experts* to

---

[4]  This argument is also illogical.  If NRC OCI compliance is, in fact, more specialized than
FAR regulations—a point about which the government has no expert evidence—then it is
surely less in the realm of common knowledge, making an expert *more* necessary, not less.

establish standards for the jury to apply—not lay testimony about poor communication and post-hoc arguments from the government's counsel.  *See* S.J. Mot. at 11–14.

The government could have had an expert establish those NRC OCI compliance standards and outline what a reasonable OCI compliance system looks like.  It could have addressed what components are critical and why.  It could have addressed why the decision not to include certain types of relationships in an OCI compliance system would have been unreasonable and why.  It could have balanced the costs and benefits of more robust systems.  It could have evaluated the technology available to SAIC in the 1990s and whether it used it effectively.  It could have evaluated the organizational structure of SAIC and determined, based on expert opinion, whether communication was actually "very, very poor," Opp'n at 8, in the proper context.  It could have compared SAIC's OCI compliance systems to others in the industry.  The government chose not to, and this failure of proof prevents it from presenting a case that SAIC showed "aggravated gross negligence" or "deliberate ignorance" in identifying and disclosing OCIs.  *SAIC*, 626 F.3d at 1275.

C.     **The Reckless Disregard Theory Cannot Stand In The Face Of Undisputed Expert Evidence.**

The government has conceded the facts asserted by SAIC's experts, which establish a relevant standard of care and that SAIC exceeded it, whether being "above average" as Mr. McWhirter concluded or, as Mr. Wilkins concluded, having advanced systems that made SAIC an industry leader.  *See* S.J. Mot. at 19–20.  The failure to present contrary evidence leaves these opinions undisputed, and SAIC is entitled to summary judgment even if the Court were to determine that the government's failure to produce expert evidence, alone, does not require summary judgment for SAIC.  *See* S.J. Mot. at 19; *Quintana-Ruiz*, 303 F.3d at 76–77 ("While juries may decide what weight to give to the testimony of expert witnesses, they are not at liberty

13

to disregard arbitrarily the unequivocal, uncontradicted, and unimpeached testimony of an expert where . . . the testimony bears on technical questions . . . beyond the competence of lay determination.") (citation omitted).

The government has conceded that OCI compliance systems, generally, are beyond the competence of lay determination—it has only argued that a standard of care is not required in this case. A technical system regulating technical matters is beyond lay knowledge, surely just as complex as topics about which courts require expert testimony, such as the credit card application system at issue in *Beard v. Goodyear Tire & Rubber Co.*, 587 A.2d 195, 200–01 (D.C. 1991). *See also Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217 (D.C. Cir. 2011) (expert required to interpret national fire standards); *Briggs v. Wash. Metro. Area Transp. Auth.*, 481 F.3d 839 (D.C. Cir. 2007) (expert required to evaluate proper lighting at metro stop); *Williams v. District of Columbia*, 530 F. Supp. 2d 119, 127 (D.D.C. 2008) (expert required to establish actual injury in Section 1983 claim); *Nat'l Tel. Coop. Assoc. v. Exxon Corp.*, 38 F. Supp. 2d 1, 9 (D.D.C. 1998) (expert required to evaluate storage and maintenance of underground gas tanks).

Given the complex matter at hand and the uncontested expert evidence that SAIC's OCI compliance systems were some of the best in the industry, the government cannot justify proceeding to trial in this case on its mere unguided and standardless assertion that SAIC's OCI compliance systems were "bad." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–52 (1986); *Quintana-Ruiz*, 303 F.3d at 76–77. To allow the jury to consider another outcome would invite only arbitrariness and prejudice, not fair consideration of the facts, to overcome SAIC's evidence. This Court should grant SAIC's motion for summary judgment on reckless disregard.

**III.    The Government Failed Entirely To Address SAIC's Alternative Motion In Limine, So If The Court Denies SAIC's Summary Judgment Motion, It Should Grant SAIC's Motion In Limine.**

The government's response did not address at all the arguments raised in SAIC's alternative motion in limine.  The government has made no contest of that motion, *see* S.J. Mot. at 20–23, and this Court should, alternatively, grant that motion should it deny partial summary judgment on reckless disregard.  *See Banner Health*, 905 F. Supp. 2d at 185.  Without the context of expert testimony, the evidence referenced by the government in proving that SAIC's OCI compliance systems showed reckless disregard will be confusing, prejudicial, and should not be allowed.

## CONCLUSION

The D.C. Circuit has ruled that the government's implied false certification theory is problematic precisely because it can radically expand the reach of the False Claims Act beyond Congress's intent.  *SAIC*, 626 F.3d at 1270.  It must be cabined by "strict enforcement of the Act's materiality and scienter requirements."  *Id.*  Instead of attempting to satisfy this stringent requirement, the government proposes to try to convince a jury, without establishing the required standard for an OCI compliance system, and in the face of two undisputed expert opinions to the contrary, that SAIC showed reckless disregard for its OCI obligations.  Allowing the government to proceed with a "reckless disregard" theory would subject SAIC—not to the knowledge requirement of the False Claims Act—but to either a standard of strict liability or an arbitrary evaluation by a jury without expert guidance on the standards it should use to judge SAIC.  Neither is the law.  This Court should grant SAIC partial summary judgment on reckless disregard.

Dated:  May 15, 2014

Respectfully submitted,

/s/ Andrew S. Tulumello
Andrew S. Tulumello (D.C. Bar No. 468351)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Telephone: (202) 955-8657
E-mail: atulumello@gibsondunn.com

*Counsel for Defendant Leidos, Inc.*